**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2246

_____

MICHAEL MARCAVAGE, Appellant

v.

NATIONAL PARK SERVICE;
AGENCY OF THE DEPARTMENT OF THE INTERIOR;
RANGER SAPERSTEIN;
CHIEF RANGER CRANE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-04594)
District Judge: Honorable Harvey Bartle, III

_____

Submitted Under Third Circuit LAR 34.1
December 15, 2011

Before: SLOVITER, VANASKIE and GREENBERG,
*Circuit Judges*

(Filed: February 2, 2012)

Leonard G. Brown, III, Esq.
Clymer, Musser, Brown & Conrad, P. C.
408 W. Chestnut Street
Lancaster, PA 17603
        *Counsel for Appellant*

Tony West, Assistant Attorney General
        *(Did not enter an appearance)*
Zane David Memger, United States Attorney

*(Did not enter an appearance)*
Barbara L. Herwig, Esq.
Daniel J. Lenerz, Esq.
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
    *Counsel for Appellees*

———————

OPINION OF THE COURT

———————

VANASKIE, *Circuit Judge.*

Michael Marcavage brought an action under 42 U.S.C. § 1983 against the National Park Service, the United States Department of the Interior, and Park Service Rangers Alan Saperstein and Ian Crane, alleging violations of his rights under the First Amendment, the Fourth Amendment, and the Equal Protection Clause. The District Court granted the defendants' motion to dismiss, and we will affirm.

I.

On October 6, 2007, Marcavage, using a bullhorn, led an anti-abortion demonstration on the sidewalk of Sixth Street at the entrance to the Liberty Bell Center at Independence National Historical Park in Philadelphia. Marcavage and his group shared the sidewalk with tourists, horse and carriage operators, and participants in a walk for the Susan G. Komen Foundation, an organization dedicated to eliminating breast cancer.

At approximately 11:45 a.m., Ranger Saperstein informed Marcavage that he would have to vacate the sidewalk because it was not designated as a First Amendment area under Park regulations. Saperstein also expressed concern that Marcavage's group was potentially interfering with traffic flow on the sidewalk and upsetting visitors to the Park. Saperstein issued Marcavage an oral permit to continue his rally on the opposite side of the Liberty Bell Center, which was open for First Amendment activity under Park regulations. Chief Ranger Crane, Saperstein's supervisor,

also spoke with Marcavage via telephone and similarly encouraged Marcavage to move to another area of the Park. Marcavage refused this and other requests to leave the sidewalk.

Over two hours later, at approximately 2:05 p.m., Saperstein, while holding Marcavage's hands behind his back, escorted him off the Sixth Street sidewalk. Saperstein then issued Marcavage a citation for "[v]iolating a term or condition of a permit" under 36 C.F.R. § 1.6(g)(2). Later, another citation for "[i]nterfering with agency functions" under 36 C.F.R. § 2.32 was mailed to Marcavage. A United States Magistrate Judge subsequently convicted Marcavage of both misdemeanors. *United States v. Marcavage*, No. 08-0511, 2009 WL 2170099 (E.D. Pa. June 17, 2009) ("*Marcavage I*"). The convictions were affirmed by a United States District Judge. *United States v. Marcavage*, No. 08-mj-0511, 2009 WL 2170094 (E.D. Pa. July 16, 2009) ("*Marcavage II*"). On further appeal, however, we reversed. *United States v. Marcavage*, 609 F.3d 264 (3d Cir. 2010) ("*Marcavage III*"). We held that there was insufficient evidence to support Marcavage's conviction for "violating a term or condition of a permit," and vacated his conviction for "interfering with agency functions" on the ground that it was invalid under the First Amendment.

While Marcavage's appeal from his convictions was still pending, he filed this action. The District Court stayed proceedings pending the outcome of the criminal appeal. Once we decided the appeal, Marcavage filed an amended complaint. Marcavage alleged that his arrest violated the First Amendment, the Fourth Amendment, and the Equal Protection Clause of the Fourteenth Amendment as applied to federal officials through the Fifth Amendment. He sought compensatory and punitive damages along with declaratory and injunctive relief.

Defendants moved to dismiss Marcavage's action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the District Court granted the motion. *Marcavage v. Nat'l Park Serv.*, 777 F. Supp. 2d 858 (E.D. Pa. 2011). The District Court dismissed the damages claims against the National Park Service and the Department of the Interior on

the ground that an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) cannot be pursued against the federal government and its agencies absent a waiver, and no waiver occurred here. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The District Court then found that Saperstein and Crane were entitled to qualified immunity from both the First Amendment and the Fourth Amendment claims because Marcavage's First Amendment rights were not clearly established at the time of his arrest, and Marcavage could not show that the rangers acted without probable cause when arresting him. The District Court also dismissed Marcavage's Equal Protection claim because he was not similarly situated to the other groups in front of the entrance to the Liberty Bell Center who were allowed to stay on the Sixth Street sidewalk. Finally, the District Court dismissed as moot Marcavage's claims for injunctive and declaratory relief, as the National Park Service has revised its regulations to designate the Sixth Street sidewalk as a public area open for First Amendment activity, and issued new regulations exempting groups of under twenty-five individuals from permit requirements. *See* Independence National Historic Park, Superintendent's Compendium § III.B (2010); 36 C.F.R. § 2.51(b)(1).

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of an order granting a motion to dismiss is plenary. *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007). When reviewing a Rule 12(b)(6) dismissal, we accept as true all well-pled factual allegations in the complaint, and view them in the light most favorable to the plaintiff. *Id.*

## A.

The doctrine of qualified immunity involves a two-part test. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). The defendants are entitled to qualified immunity unless the plaintiff demonstrates that both prongs have been satisfied. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)). First, there

must be "a violation of a constitutional right." *Scott*, 550 U.S. at 377. Second, that right must be "clearly established . . . in light of the specific context of the case." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Marcavage argues that his "rights to engage in fundamental speech activities on a public sidewalk were clearly established." (Appellant's Br. 18.) We disagree with this contention.

As the Supreme Court has noted, "[i]f judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). Both a United States Magistrate Judge and a United States District Judge previously determined that the Sixth Street sidewalk was a nonpublic forum – an area that is not used by tradition or designation for public expression and that consequently carries a less stringent standard of review when assessing government justifications for limiting speech. *See Marcavage I*, 2009 WL 2170099, at *3; *Marcavage II*, 2009 WL 2170094, at *8. This led both judges to find Marcavage's arrest constitutionally permissible. While we ultimately held otherwise, the fact that two judges found no First Amendment violation indicates that Marcavage's constitutional right to demonstrate on the Sixth Street sidewalk was not clearly established.

As we noted in *Marcavage III*, "[t]he question whether a particular sidewalk is a public or a nonpublic forum is highly fact-specific and no one factor is dispositive." 609 F.3d at 275. It was reasonable for the rangers to believe that their conduct comported with the First Amendment when they escorted Marcavage off the Sixth Street sidewalk and issued him a citation. They should not be stripped of qualified immunity simply because this belief turned out to be mistaken.

Marcavage argues that "first amendment freedoms will be seriously jeopardized" should "mistaken judicial conclusions . . . be[] fashioned into tools to shield officers from liability for content-based discrimination." (Appellant's Reply Br. 3.) We disagree. Marcavage's First Amendment rights were already vindicated when we vacated his previous conviction. It is one thing to decide that a conviction violates

the First Amendment. It is quite another to subject the arresting officers to damages for making a reasonable mistake. Accordingly, Saperstein and Crane are entitled to qualified immunity from Marcavage's First Amendment claim.

B.

Marcavage next argues that the defendants are not entitled to qualified immunity on his Fourth Amendment claim because "no probable cause existed to arrest" him. (Appellant's Br. 29.) Although we ultimately vacated Marcavage's conviction for "interfering with agency functions" on First Amendment grounds, we noted in *Marcavage III* "that the government presented sufficient evidence for the Magistrate Judge to have reasonably found that Marcavage . . . committed 'interference.'" 609 F.3d at 272. A criminal conviction requires proof of guilt beyond a reasonable doubt, a much higher standard than that required for a finding of probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). If there was sufficient evidence to support Marcavage's conviction, by definition there must also have been probable cause to arrest him.

The fact that Marcavage's conviction was later reversed is not determinative. As noted above, to strip Saperstein and Crane of qualified immunity requires the violation of a clearly established constitutional right. Marcavage's right to demonstrate on the Sixth Street sidewalk was far from clear at the time of his arrest. As we observed in *Gilles v. Davis*, "it does not necessarily follow that the arresting officers are civilly liable for [] arrest[s]" carried out under regulations that are ultimately held to be unconstitutional. 427 F.3d 197, 207 (3d Cir. 2005). As the Supreme Court stated in *Hunter v. Bryant*, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Until we reversed the Magistrate Judge and District Judge in *Marcavage III*, Saperstein and Crane had made no mistake. They had better than probable cause – they had evidence

sufficient for a conviction. As in the First Amendment context, qualified immunity bars Marcavage's Fourth Amendment damages claim.

C.

Marcavage also claims that the District Court erred in its equal protection analysis and failed to "evaluat[e] Marcavage's claim under a 'class of one' theory." (Appellant's Br. 33.) In order to successfully bring about an equal protection claim based on the "class of one" doctrine, the plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Marcavage was not similarly situated to the tourists, the horse and carriage operators, and the walk participants who were also on the Sixth Street sidewalk. Unlike all three groups, Marcavage used a bullhorn and remained standing on the sidewalk for over two hours. Marcavage was also present at the Park without a permit, unlike the horse and carriage operators, who were required to obtain one in order to conduct business in the Park. *See* 36 C.F.R. § 5.3. Marcavage contends these differences are immaterial. We disagree. We held in *Startzell v. City of Philadelphia*, for example, that volunteers in a government-permitted event "were not similarly situated to . . . attendees with no relationship to the organizers whatsoever." 533 F.3d 183, 203 (3d Cir. 2008). Similarly, we held in *Marcavage III* that "ensuring traffic flow and/or public safety, and regulating noise" are "undoubtedly . . . legitimate government interest[s]." 609 F.3d at 287.

Marcavage observes that "[s]ome of the individuals gathered [on the Sixth Street sidewalk] were of a different race than Marcavage. Some were wearing differently colored or styled clothing. Some likely belonged to a different religious group or had no religious affiliation. Those facts do not make Marcavage dissimilar." (Appellant's Reply Br. 8-9.) We agree, and this would be a different case if Marcavage were escorted from the Sixth Street sidewalk because of any of those differences. But he was not. Marcavage was

7

escorted from the sidewalk because he was leading a demonstration without a permit, creating excessive noise, and potentially interfering with traffic flow. He was not "in all relevant respects alike" the others who shared the Sixth Street sidewalk. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Accordingly, his claim under the Equal Protection Clause fails.

D.

Finally, Marcavage argues that the District Court erred in dismissing for mootness his claims for declaratory and injunctive relief. He contends that the new regulations issued by the National Park Service that would specifically allow for permit-less demonstrations of under twenty-five individuals on the Sixth Street sidewalk are a "voluntary cessation of a challenged policy" that "does not deprive a federal court of its power to determine the legality of the practice." (Appellant's Br. 40.)

The standard used to analyze mootness based on voluntary conduct was set forth by the Supreme Court in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, which provides that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n.*, 393 U.S. 199, 203 (1968)).

Marcavage looks to *Parents Involved in Community Schools v. Seattle School District No. 1,* 551 U.S. 701 (2007), to support his argument. He also contends that the facts of "[t]his case bears close resemblance to" *United States v. Government of the Virgin Islands*, 363 F.3d 276 (3d Cir. 2004) (Appellant's Br. 41.) We disagree. In *Parents Involved*, the Supreme Court held that a Seattle school district had not met the standard for mootness set forth in *Friends of the Earth* because the district had only stopped applying the challenged policy "pending the outcome of this litigation," and "nowhere suggests that if this litigation is resolved in its favor it will not resume" the challenged policy. 551 U.S. at 719. Here, by way of contrast, the Park Service is not

8

contesting the determination in *Marcavage III* that the Sixth Street sidewalk is a public forum.

In *Government of the Virgin Islands*, we found the case not moot because "[t]he timing of the contract termination – just five days after the United States moved to invalidate it, and just two days before the District Court's hearing on the motion – strongly suggests that the impending litigation was the cause of the termination," and, given the continued defense of the contract in question, there was no assurance that the Government of the Virgin Islands would not enter into a contract similar to the challenged contract in the future. 363 F.3d at 285. In the case before us, in contrast, the Park Service did not revise its position on demonstrations on the Sixth Street sidewalk in reaction to this civil rights action. It did so only after a definitive determination in *Marcavage III* that the area was indeed a public forum. Moreover, there is no indication that the regulation allowing permit-less demonstrations involving twenty-five persons or fewer was adopted to avoid an adverse judgment in this case and will be abandoned once this case becomes final.

As we noted in *Bridge v. United States Parole Commission*, "[g]overnment officials are presumed to act in good faith." 981 F.2d 97, 106 (3d Cir. 1992). Marcavage has been unable to rebut this presumption as he has not made any showing of bad faith on the part of the Park Service. This presumption and the changes to the Park Service's regulations concerning protests on the Sixth Street sidewalk make it unreasonable to expect that future constitutional violations will recur. The Supreme Court noted in *Summers v. Earth Island Institute* that a plaintiff seeking an injunction "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." 555 U.S. 488, 493 (2009). Marcavage is unable to make such a showing, and his claims for declaratory and injunctive relief were therefore properly dismissed as moot.[1]

---

[1] Even if constitutional mootness does not pertain here, dismissal of the requests for injunctive and declaratory relief on ground of prudential mootness was warranted. "The discretionary power to withhold injunctive and declaratory

III.

For the foregoing reasons, we will affirm the District Court's judgment.[2]

---

relief for prudential reasons, even in a case not constitutionally moot, is well established." *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 700 (3d Cir. 1996) (quoting *S-1 v. Spangler,* 832 F.2d 294, 297 (4th Cir. 1987)). The key inquiry in a prudential mootness analysis is "'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" *Int'l Bhd. of Boilermakers v. Kelly,* 815 F.2d 912, 915 (3d Cir. 1987) (quoting *Jersey Cent. Power & Light Co. v. New Jersey,* 772 F.2d 35, 39 (3d Cir. 1985)). In this case, the actions taken by the Park Service in recognizing the Sixth Street sidewalk as a public forum and eliminating the need for a permit for groups of less than twenty-five persons forecloses meaningful injunctive or declaratory relief with respect to the October, 2007 incident.

[2] Appellees have moved to strike from the Appendix filed by Marcavage exhibits and transcript from Marcavage's criminal trial (App. 230a-616a), two DVDs, apparently introduced by Marcavage at his criminal trial, (App. 617a-618a), and the docket sheet from his criminal proceedings. (App. 610a-624a.) It is undisputed that these materials were not presented to the District Court as part of the instant case. Because the materials could have been, but were not, presented to the District Court, and there are no exceptional circumstances warranting our consideration of them on this appeal, Appellees' motion will be granted. *See Acumed LLC v. Advanced Surgical Servs.,* 561 F.3d 199, 226-227 (3d Cir. 2009).