NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3917
_____

MARTIN GROSS, Individually and t/d/b/a The Art I Do,
                                                            Appellant,

v.

R.T. REYNOLDS, INC.; HARRISBURG UNIVERSITY OF SCIENCE AND
TECHNOLOGY; D.E. GIMMELL, INC.; GRAYSTONE BANK; IKE SHOLLEY;
WAYNE SPAHR; RON WHISKER; TODD BUZARD; ERIC DARR;
DELLANOR YOUNG; DAVE ANGLE,
                                                            Appellees.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 10-cv-2380)
District Judge:  Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2012

Before:  SLOVITER, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: July 6, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Martin Gross appeals the order of the United States District Court for the Middle

District of Pennsylvania dismissing his civil rights claims under 42 U.S.C. §§ 1981 and

1983, as well as his state law claims alleging breach of contract and breach of the duty of good faith and fair dealing. Although Gross's Amended Complaint fails to satisfy the pleading standards set forth in Federal Rule of Civil Procedure 8, we will remand to allow the District Court to determine in the first instance whether it should grant Gross leave to further amend, or whether such amendment would be futile or inequitable.

## I. Background

### A. *Facts*[1]

Defendant Harrisburg University of Science and Technology ("the University") is a private institution registered with the Pennsylvania Department of Education. It receives public funding and is subject to state and federal regulation. Defendant Eric Darr is the President of the University. Defendant R.T. Reynolds, Inc. ("Reynolds") is a Pennsylvania corporation and the general contractor for a construction project at the University. Defendants Ike Sholley, Wayne Spahr, Ron Whisker, Todd Buzard, and Dave Angle are Reynolds's officers, employees, or agents. The University's construction project "received extensive federal, state, and/or local funding, was subject to public procurement requirements and standards, and reporting requirements, including …

---

[1] In reviewing a district court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we "accept as true all well-pled factual allegations in the complaint, and view them in the light most favorable to the plaintiff." *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 858 (3d Cir. 2012).

2

[reporting pertinent to] the City of Harrisburg's disadvantaged business program for minority and women owned businesses."[2] (Amend. Compl. ¶ 13.)

Gross (doing business as "The Art I Do"[3]) and his colleague James White, both of whom are African-American, submitted a proposal to Reynolds to perform painting in connection with Reynolds's construction work at the University. Defendants Whisker and Spahr allegedly solicited Gross to work on the construction project, negotiated with him on behalf of Reynolds, and were "involved in the contract management matters throughout the performance of the contract." (Amend. Compl. ¶ 17.)

According to Gross, Reynolds was initially apprehensive about doing business with him and White, based on its past dealings with them. Specifically, Reynolds was hesitant to work with Gross and White because it had worked with them on a mold-abatement project in 2005 and, during that project, Gross and White had "refused to become complicit in an effort to conceal the … scope of the mold problem." (*Id.* ¶ 22.) As Gross tells it, when he and White refused to conceal that problem, "Reynolds was forced to make significant additional expenditures" on the 2005 project. (*Id.*)

Despite Reynolds's initial hesitance, however, it entered a subcontracting agreement with Gross and White on May 7, 2007. Reynolds hired Dellanor Young, a consultant, to oversee "the disadvantaged business provisions of … [that] contract." (*Id.*

---

[2] Under the City of Harrisburg's ("the City") disadvantaged business program, contractors who submitted bids for general construction projects in the City received points for soliciting and using businesses owned by minorities and women.

[3] The Amended Complaint alleges that The Art I Do is a certified disadvantaged business under the City's disadvantaged business program.

¶ 15.) Under the agreement,[4] Gross and White promised to provide Reynolds with painting services. The agreement also stated that Reynolds could reduce the scope of Gross's duties under the contract and require Gross to subcontract with other vendors to perform some of his contractual duties. It also provided that Reynolds was not responsible for any unexpected delays in the construction project. Gross claims that the agreement also required him to secure financing from Defendant Graystone Bank ("Graystone"), to ensure that The Art I Do could satisfy its payroll expenses and other costs associated with performing under the contract while Reynolds was in the process of making payments. Gross alleges that, unlike other similarly situated non-minority contractors who entered into financing agreements with Graystone, he was required "to grant Graystone a mortgage on [his] personal residence … ." (*Id.* ¶ 37.)

Gross points to a series of events during the formation and performance of the agreement which, according to him, demonstrate that Reynolds intended to discriminate against him on the basis of race. First, he claims that, at the time he executed the agreement with Reynolds, "Reynolds knew that it would not perform certain aspects of [the] contract … but proceeded to" execute the agreement in order to enhance its position in the bidding process for construction work at the University. (*Id.* ¶ 19.) Second, he

---

[4] Although Gross did not attach a copy of the agreement to the Amended Complaint, Reynolds attached a copy of it to its motions to dismiss. Because there is no dispute as to the authenticity of the agreement, and the precise terms are integral to our analysis, we may consider it in assessing the merits of Gross's appeal. *See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We … hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

claims that "[e]arly in the performance of the contract, it became apparent that work delays would not permit [Reynolds] to be able to commence and end its work as contemplated by the contract" (*id*. ¶ 24), and that Reynolds's employees "sabotaged" his work schedule "by showing favoritism and granting preferences to other non-minority contractors." (*Id.* ¶ 33.) Third, he alleges that, although his duties under the agreement included installing wood veneer in a building at the University, "Reynolds arbitrarily decided to remove the veneer job from the scope of [Gross's] work … and to give it to another contractor … ." (*Id.* ¶ 39.) Fourth, Gross alleges that, on January 17, 2008, Ike Sholley, a Reynolds employee, sent him a letter demanding that he remove White from the University construction project, and that Sholley made that demand for "discriminatory and retaliatory reasons[] relating to Mr. White's race … ." (*Id.* ¶ 28.) Finally, Gross claims that Reynolds demonstrated its "favoritism … to … non-minority contractors," by selecting D.E. Gimmell, Inc. ("Gimmell"), another subcontractor, to perform parking lot line painting for the construction project even though he originally bid on that work, and that Reynolds required him to compensate Gemmill when it completed the painting. (*Id.* ¶ 33.)

On several occasions, White complained to Reynolds or the University about the allegedly discriminatory behavior of Reynolds and its employees. In early 2008, White wrote a letter to an official at the University complaining that minority contractors received unequal treatment during the performance of their duties in connection with the construction project at the University, and Gross made several written and oral complaints to Reynolds about the work delays. Although those letters and complaints did

5

not fix his predicament with Reynolds and its employees, Gross alleges that his working relationship with the company improved in March 2008, after he hired a non-minority foreman.

Gross asserts that, although he completed all of his contractual obligations by April 2009, Reynolds failed to pay him from $88,000 to $120,000 it owed him under the terms of the agreement.[5]

B.    *Procedural History*

Based on the conduct described above, Gross initiated this lawsuit against Reynolds, the University, Darr, Young, Graystone, Gimmell, Sholley, Spahr, Whisker, Buzard, and Angle (collectively, "Defendants"), asserting claims under 42 U.S.C. §§ 1981 and 1983, as well as state law claims of breach of contract and breach of the implied duty of good faith and fair dealing. All Defendants moved to dismiss the Amended Complaint. On September 22, 2011, the District Court issued an opinion and order dismissing Gross's federal claims against each of the Defendants.[6] Having dismissed the federal claims, the Court declined to exercise supplemental jurisdiction over Gross's state law claims under 28 U.S.C. § 1367(c)(3).

This timely appeal followed.

---

[5] Although the Amended Complaint states that Reynolds failed to "Reynolds is … obligated to pay the Art I Do … $88,000 - $120,000," (Amend. Compl. ¶ 50), Gross's appellate brief states that "Reynolds is … obligated to pay the Art I Do … $90,000," (Appellant's Br. at 12.)

[6] The District Court also dismissed Eloise Gross as a Plaintiff. We affirm that dismissal as the Amended Complaint contains no allegations indicating that Eloise Gross was involved in any of the transactions or occurrences giving rise to this lawsuit.

6

## II.    Discussion[7]

On appeal, Gross argues that the District Court erred by dismissing the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Our review of that decision is plenary.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).  We take as true all the factual allegations in the Amended Complaint and the reasonable inferences that can be drawn from those facts, *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010), but we disregard legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Sheridan*, 609 F.3d at 262 n.27 (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

### A.    *Gross's § 1981 Claims Against Reynolds and Its Employees*

We begin by addressing Gross's § 1981 claims against Reynolds and its employees.  The District Court held that the Amended Complaint failed to allege facts sufficient to state a plausible § 1981 claim against any of those Defendants.  We agree.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

---

[7] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  We have jurisdiction under 28 U.S.C. § 1291.

7

> enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a claim under § 1981, a party must allege facts sufficient to show: "(1) [he] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts … ." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citation and internal quotation marks omitted).

Accepting as true the averments in the Amended Complaint, we conclude that Gross has failed to allege a plausible claim of intentional discrimination on the basis of race against Reynolds and its employees under § 1981. While the Amended Complaint alleges an abundance of wrongdoing by Reynolds and its employees, it fails to allege any facts supporting the conclusion that those acts were motivated by discrimination on the basis of race. Instead, it alleges a series of unfortunate events and then states, in conclusory fashion, that the reason for those events is that Reynolds harbored discriminatory animus towards Gross or White. For example, Gross alleges that Reynolds's employees "sabotaged" his work schedule "by showing favoritism and granting preferences to other non-minority contractors," and delayed the construction project. (Amend. Compl. ¶ 33.) However, Gross fails to allege how Reynolds treated non-minority contractors any differently than it treated him, or how delays in the

8

construction project were motivated by or related to Gross's race.[8]  Gross also claims that Sholley sent him a letter demanding that he remove White from the University construction project, and that Sholley did so for "discriminatory and retaliatory reasons[] relating to Mr. White's race … ." (*Id.* ¶ 28.)  But, once again, Gross alleges no facts supporting that conclusion.  So too with Gross's averments that Reynolds removed the veneer work from the agreement and required him to retain and compensate Gemmill for work which Gross "originally bid on but was deleted from the scope of work." (*Id.* ¶ 42.)  Even if that conduct constituted a breach of the agreement, Gross fails to allege facts supporting the inference that Reynolds took those actions for discriminatory reasons.[9]

---

[8] It is not immediately apparent why the hiring of a white foreman by a minority subcontractor would make a racist contractor more inclined to treat the minority subcontractor better, but even if that were true, Rule 8 requires more than mere speculation.  A plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  Thus, without more, the fact that Gross's and Reynolds's relationship improved after Gross hired a non-minority foreman does not give rise to a reasonable inference that Reynolds intended to discriminate against Gross on the basis of race.

[9] The agreement expressly gives Reynolds the authority to take those actions, and Gross fails to allege any facts suggesting that Reynolds exercised that authority for discriminatory reasons.  (*See* App. at 112 (providing "[t]he Subcontractor may be ordered in writing by the Contractor, without invalidating this Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions … ."); *id.* at 107 (providing that "[t]he Contractor may require the Subcontractor to enter into agreements with Sub-subcontractors performing portions of the Work of this Subcontract by which the Subcontractor and the Sub-subcontractor are mutually bound, to the extent of the Work to be performed by the Sub-subcontractor … .").)

Therefore, because the Amended Complaint fails to allege facts sufficient to state a plausible § 1981 claim against Reynolds and its employees, the District Court properly dismissed Gross's § 1981 claims against those defendants.[10]

B.       *Gross's § 1981 Claims Against the University and Darr*

The District Court also dismissed the § 1981 claims against the University and Darr because they were not parties to a contract with Gross, and the factual allegations in the Amended Complaint did not support a reasonable inference that they interfered with a contract between Reynolds and Gross.  We agree with that considered judgment.

Section 1981 prohibits discrimination on the basis of race in the "mak[ing] and enforc[ing][of] contracts."  42 U.S.C. § 1981(b).  The statute defines the "mak[ing] and enforc[ing] [of] contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.*  Consistent with that language, the Supreme Court has held that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Here, the Amended Complaint does not allege that Gross "has or would have rights under [an] existing or proposed contractual relationship" with the University or

_____

[10] On August 15, 2011, the District Court issued an order dismissing with prejudice all claims against Gemmill based on Gross's stipulation to that effect.

10

Darr. *Id.* Thus, in order to state a claim against the University and Darr, Gross must allege that they blocked him from creating a contractual relationship with Reynolds or another third party, or impaired a contractual relationship that existed between him and a third party. The Amended Complaint contains no such allegations. With respect to Darr, the Amended Complaint alleges that he "approached [Gross] and made inquiries into the nature of [Gross's] relationship with Reynolds," and that Gross had the impression that, based on Darr's inquiries, "[he] was trying to learn things from [Gross] surreptitiously … ." (Amend. Compl. ¶ 26.) As to the University, the Amended Complaint alleges vaguely that, along with all of the other Defendants, it "knowingly subjected [Gross] to disparate treatment in the management of his subcontract because he is a minority." (*Id.* ¶ 48.)

None of those allegations supports a reasonable inference that, for reasons related to race, the University or Darr impaired the creation or performance of a contract to which Gross was a party. First, the vague allegation that Darr was "trying to learn things surreptitiously" provides no indication that his inquiries were racially motivated or designed to interfere with Gross's contract with Reynolds. Moreover, Gross's assertion that the University "knowingly subjected him to disparate treatment … because he is a minority" is nothing more than a legal conclusion couched as a factual allegation, which, under Rule 8, is insufficient to defeat a motion to dismiss. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (noting that on motion to dismiss court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation" (citations and internal quotation marks omitted)). Therefore, we agree with the District Court's decision to dismiss Plaintiff's

11

§ 1981 claims against the University and Darr.

C. *Gross's § 1981 Claims against Young and Graystone Bank*

We also agree with the District Court's determination that Gross failed to allege facts sufficient to state a plausible § 1981 claim against Young and Graystone. With respect to Young, the Amended Complaint alleges in conclusory fashion that, although Young was "charged with the responsibility of monitoring the disadvantaged business provisions of the bid documents and the contract" (Amend. Compl. ¶ 15), she "knowingly worked with Reynolds to conceal the" fact that "Reynolds was failing to meet its commitments to [Gross] and perhaps other minority contractors," and did not "work toward contractual or extra-contractual remedies for [those] failures," (*id.* ¶ 31.) However, as the District Court correctly noted, the Amended Complaint fails to allege anything Young did to conceal those problems or how she monitored the project in a manner that gives rise to the reasonable inference that she intended to discriminate against Gross on the basis of race.[11]

The Amended Complaint also fails to state a § 1981 lending discrimination claim against Graystone. To make a prima facie lending discrimination claim, Gross must show

> (1) that he belongs to a protected class, (2) that he applied and was qualified for credit that was available from the defendant, (3) that his application was denied or that its approval was made subject to unreasonable or overly burdensome

---

[11] Indeed, even assuming that Young was negligent by failing to adequately monitor the construction project, and concealed the fact that Reynolds failed to meet its contractual obligations, Gross does not allege facts supporting the inference that Young acted for reasons related to race.

12

conditions, and (4) that some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent.

*Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 275 (3d Cir. 2010). The Amended Complaint does not allege that Gross was qualified for an unsecured line of credit, or that the requirement of a mortgage on his property was unreasonable or overly burdensome. Moreover, Gross's naked assertion that Graystone did not require other similarly situated non-minority customers to secure their loans with a home mortgage does not suffice to satisfy Rule 8's pleading standard. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, we agree with the District Court's conclusion that the Amended Complaint fails to state a § 1981 lending discrimination claim against Graystone.

D.     *Gross's § 1983 Claims Against All Defendants*

Finally, the District Court dismissed Gross's § 1983 claims based on its determination that the Amended Complaint failed to allege that any of the Defendants acted under the color of state law. We find no error in that determination. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

13

laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

42 U.S.C. § 1983. It is well-settled that, "to state a claim of liability under § 1983, [the plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005).

That requirement is fatal to Plaintiff's § 1983 claim. The Amended Complaint contains no facts supporting a reasonable inference that Graystone, Reynolds, Reynolds' employees, Gemmill, or Young are state actors. With respect to the University, the Amended Complaint suggests that because the University "was funded in large part by public monies" and is subject to "state ... laws governing public procurement," it is a state actor under § 1983. (Amend. Compl. at 2.) However, a private entity does not become a state actor for the purpose of § 1983 simply because it is subject to state regulations or receives funding from the state. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (holding that nonprofit, private "school's receipt of public funds does not make [its] discharge decisions acts of the State"); *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (rejecting claim that nursing home was state actor even though state subsidized the operating and capital costs of the nursing home facilities, paid the medical expenses of more than 90% of the patients in the home, and licensed the nursing home's facilities). Instead, in determining whether conduct is attributable to the state or a private entity, we ask "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (citations and internal quotation marks omitted). Here, aside from the

14

allegations that the University receives "public monies" and is subject to state regulation, the Amended Complaint is devoid of any factual allegations supporting a reasonable inference that the University is a state actor. And because the University is not adequately alleged to be a state actor, it is not subject to liability under § 1983. Finally, because the University is not a state actor, and the Amended Complaint provides no indication that Darr is a state actor, he is not subject to liability under § 1983.

In sum, because the Amended Complaint fails to allege that any of the Defendants are state actors, the District Court appropriately dismissed Plaintiff's § 1983 claims.[12]

D.    *Leave to Amend*

Gross also argues that the District Court erred by dismissing the Amended Complaint without granting him leave to amend. That may be true, but it is difficult to discern what happened in the District Court in this regard. We cannot tell from the parties' submissions what, if anything, was communicated to Gross to show either that he had leave to file a second amended complaint or to say that amendment would be futile. The District Court dismissed the Amended Complaint without commenting on whether the dismissal was with prejudice. Nevertheless, the parties have treated the dismissal at issue here as being with prejudice, and, since the case appears to have been closed on the District Court's docket, we will treat it that way too.

---

[12] Because Plaintiff does not argue that the District Court abused its discretion by dismissing their pendent state law claims, we do not consider that issue on appeal. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) (noting that "[w]hen an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal").

Under our precedent, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Here, it appears that amendment may be futile with respect to at least some of the claims against some of the Defendants. For example, Graystone asserts in its brief that Gross's claims against it are barred by the statute of limitations. If true, that would render amendment futile with respect to the claims against it. Also, the Amended Complaint acknowledges that the University is a "private educational institution" (Amend. Compl. at 2), and it is not at all clear that Gross can say anything to show that the University had the kind of relationship with the state that would give rise to an inference that the University should be considered a state actor under § 1983. It thus may be that amendment of that claim as to the University and its President would be futile.

The futility or inequitableness of amendment may affect more than those two examples, but we will not endeavor to determine that now. Those are questions for the District Court to address in the first instance. As we said in *Phillips*, "even when [a] plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." 515 F.3d at 245. The District Court does not appear to have done that here. Thus, we remand for the District Court to determine and explain in the first instance whether leave to amend should be granted or whether further amendment would be futile or inequitable.

16

### III. Conclusion

For the foregoing reasons, we will vacate and remand.