CLD-272                                                             NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1791
_____

STEVEN JEAN-PIERRE,
                              Appellant

v.

BUREAU OF PRISONS;
JOHN YOST, Warden, FCI Loretto;
MARYANN PALKO, FCI Loretto Religious Chaplain
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 09-cv-00266)
District Judge:  Honorable Kim R. Gibson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 30, 2012

Before:  RENDELL, HARDIMAN and COWEN, Circuit Judges

(Opinion filed September 18, 2012)
_____

OPINION
_____

PER CURIAM.

        Steven Jean-Pierre, a federal inmate, appeals the District Court's entry of

judgment for defendants in this pro se civil rights suit seeking damages and declaratory

relief under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

U.S. 388 (1971).  For the reasons that follow, we will summarily affirm.

I.

Jean-Pierre contends that, while at FCI-Loretto in June 2008, defendant Palko, the

prison's Chaplain, impermissibly suspended his mealtime participation in the Certified

Religious Diet Program ("CRDP"), and that defendant Yost, the Warden, improperly

refused to reinstate Jean-Pierre to the CRDP.  Jean-Pierre maintained that the tenets of his

faith, Rastafarianism, required him to continue on a CRDP diet so as to avoid contact

with pork products, and that it violated his rights to make him eat from the "main line"

portion of the Alternative Diet Program to which he was assigned.  Jean-Pierre sought

relief for alleged violations of his First and Fourteenth Amendment rights.

Palko, Yost, and the Bureau of Prisons ("BOP") filed a motion to dismiss with an

alternative request for summary judgment.  On September 27, 2010, the District Court

adopted the Magistrate Judge's recommendation and dismissed the claims against the

BOP, and the official capacity claims against Palko and Yost, as barred by the doctrine of

sovereign immunity.  The District Court otherwise denied defendants' motion without

prejudice to their right to seek summary judgment at a later date.

At the close of discovery, Palko and Yost moved for summary judgment on the

remaining claims against them.  They argued that Jean-Pierre could prove no violation of

his constitutional rights, and that they are entitled to qualified immunity.  Jean-Pierre

filed a motion for judgment on the pleadings as well as an untimely motion to dismiss or

2

for summary judgment, which the Magistrate Judge treated as his response to defendants' summary judgment motion. Jean-Pierre also filed a motion to compel discovery, which the Magistrate Judge granted in part, ordering defendants to supplement their responses to two of Jean-Pierre's interrogatories. The Magistrate Judge denied Jean-Pierre's motion for appointment of counsel, and later denied a motion in which Jean-Pierre objected to the adequacy of defendants' supplemental responses to his interrogatories.

On the substantive claims, the Magistrate Judge issued a report analyzing the voluminous evidence of record and recommended that defendants' motion for summary judgment be granted. Although concluding that a reasonable factfinder could determine from the evidence that Jean-Pierre had a sincere belief that his religion required him to maintain a pork-free diet, the Magistrate Judge found no material factual dispute that defendants' decision to suspend Jean-Pierre from the CRDP was reasonably related to legitimate penological interests, in view of, inter alia, Jean-Pierre's violation of the prohibition against inmates removing food from the dining hall. The Magistrate Judge concluded, therefore, that defendants did not violate Jean-Pierre's right to the free exercise of his religion. With regard to equal protection, the Magistrate Judge found insufficient evidence to warrant a trial on Jean-Pierre's claims that he suffered religious discrimination and was treated differently than similarly situated inmates.

On March 5, 2012, the District Court overruled Jean-Pierre's objections, adopted the Report and Recommendation, and entered a final order granting summary judgment to Palko and Yost. The District Court also declined to stay entry of its judgment pending

3

Jean-Pierre's receipt of documents as part of a FOIA request. Jean-Pierre argued that a stay was warranted while he sought a copy of the FCI-Loretto Inmate Handbook and documents regarding reinstatement of inmates to the CRDP. Noting that the Magistrate Judge had already fully considered and properly rejected Jean-Pierre's claims, the District Court declined to enter a stay. Jean-Pierre filed this appeal.

## II.

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review is plenary of an order granting a motion to dismiss. Marcavage v. Nat'l Park Serv., 666 F.3d 856, 858 (3d Cir. 2012). We exercise plenary review over an entry of summary judgment, which is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (discussing standard). After a review of the record, we will summarily affirm the District Court's judgment because this appeal presents no substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); 3d Cir. LAR 27.4 and I.O.P. 10.6.

The District Court properly dismissed Jean-Pierre's claims against the BOP. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP."). The District Court also properly dismissed the official capacity claims brought

4

against Palko and Yost.  See Chinchello v. Fenton, 805 F.2d 126, 130 n.4 (3d Cir. 1986).

On the claims against Palko and Yost in their individual capacities, we discern no error in the Magistrate Judge's thorough assessment of the evidence in the summary judgment record.  There being no genuine dispute as to any material fact regarding the actions taken by Palko and Yost, summary judgment was properly entered in their favor.

The evidence bearing on the First Amendment claim reflects that Palko suspended Jean-Pierre from the CRDP for a period of thirty days after observing him remove food from the dining hall in violation of prison policy.  Jean-Pierre had been suspended from the CRDP in the past for the same infraction.  In seeking reinstatement, Jean-Pierre claimed that the CRDP diet best fit his religious needs because no pork or pork byproducts were used.  Palko initially refused to reinstate Jean-Pierre because she concluded that his needs could be met by participating in the main line portion of the Alternative Diet Program, which served no pork, pork by-products or any meat, and Jean-Pierre also could self-select appropriate foods from the hot bar and the salad bar.  Jean-Pierre objected to this alternative, claiming that his beliefs prohibited him from eating the main line offerings because pork and pork byproducts are regularly served on the main line, which would contaminate the trays, utensils, and cookware.

After Jean-Pierre filed a grievance complaining that Palko had failed to interview him before denying reinstatement to the CRDP, Palko conducted an interview but again concluded that Jean-Pierre's needs were best served through self-selection from the main line, including the no-flesh option and access to the hot and salad bars.  Palko found that

5

Jean-Pierre had demonstrated a lack of understanding of the purpose of the CRDP, and that his concerns regarding pork contamination were unfounded because all food service items on the main line are washed at 150 degrees and rinsed at 180 degrees, removing any residue from pork products. Warden Yost thereafter denied Jean-Pierre's request for reinstatement to the CRDP.

In response to another grievance from Jean-Pierre, Palko asked that he submit documentation showing that participation in the CRDP is a religious requirement for Rastafarians. After considering Jean-Pierre's submitted documents, which referred generally to Biblical verse instructing adherents to "stay away from" swine, Palko again concluded that any concern regarding contact with residue from pork products was unfounded given the manner in which food service items are washed. Warden Yost agreed with this determination, noting as well that a Rastafarian chaplain had confirmed that the dietary needs of Rastafarians are best met by self-selection of foods from the main line. The Regional Director denied Jean-Pierre's appeal, noting that all items on the list provided by the Rastafarian minister are available on the main line and no-flesh diet program. The Regional Director further noted that Jean-Pierre had been removed from the CRDP five times for violations in two different institutions, and that he continually purchased non-kosher items from the commissary, demonstrating that he does not eat kosher food exclusively. The Administrator of National Inmate Appeals rejected Jean-Pierre's grievance at the final stage of review.

Shortly thereafter, Palko offered to reinstate Jean-Pierre to the CRDP. Jean-Pierre

declined, telling Palko, "I'll see you in court." A few days later, a different chaplain granted Jean-Pierre's request for reinstatement to the CRDP. Jean-Pierre is no longer housed at FCI-Loretto, and he makes no claim of an on-going violation of his rights.

The Magistrate Judge carefully reviewed the evidence in accordance with the dictates of Turner v. Safley, 482 U.S. 78, 89 (1987),[1] and concluded that Jean-Pierre was not deprived of his First Amendment rights. We agree. Even assuming that Jean-Pierre had a sincerely held belief that his religion required participation in the CRDP, the Magistrate Judge correctly observed, inter alia, that: (i) prison officials have a rational interest in suspending inmates from the CRDP if they violate the program by removing food from the dining hall, as a security concern may be implicated by the potential for inmates to sell or barter their certified food; (ii) Jean-Pierre had alternative means at FCI-Loretto of expressing his religious beliefs; (iii) Jean-Pierre was clearly aware that it was a violation of the CRDP to remove food because he (and other inmates) had been suspended from the program in the past for violating that rule; and (iv) the BOP has an interest in reducing costs and restricting participation in the CRDP to inmates who adhere to the rules. On balance, and notwithstanding the Magistrate Judge's candid assessment

---

[1] In Turner, the Court explained that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. Applying Turner, the question here is whether there is a "rational connection" between defendants' suspension of Jean-Pierre from the CRDP and a "legitimate penological interest." DeHart v. Horn, 227 F.3d 47, 52 (3d Cir. 2000) (en banc). If so, the question then is whether defendants' actions were reasonable in light of the nature of the prison's penological interest, Jean-Pierre's

7

that not all of the Turner factors weigh squarely in defendants' favor, it is clear that Jean-Pierre's suspension was reasonably related to valid penological interests and did not impermissibly deprive him of the free exercise of his religion.

Finally, Palko and Yost were properly afforded summary judgment on Jean-Pierre's equal protection claims. Jean-Pierre complained that defendants subjected him to an interview and required documentation after he applied for reinstatement to the CRDP without requiring the same from inmates of other faiths, that defendants allegedly reinstated all the other inmates who were removed from the CRDP during the same month but did not reinstate Jean-Pierre because he was a Rastafarian, and that defendants allegedly rejected all Rastafarians applicants for the CRDP.

"To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). The Turner standard "is equally applicable to [Jean-Pierre's] equal protection claims." Id.

The evidence of record fully supports the Magistrate Judge's reasons for rejecting Jean-Pierre's equal protection claims. See Docket # 73 (R&R) at 25-32. Stated briefly, Jean-Pierre's claims of disparate treatment are either unfounded and belied by the evidence or unsupported by any evidence reasonably suggesting that defendants acted with a discriminatory intent. Furthermore, as discussed above, Jean-Pierre's suspension

---

interest in practicing his religion, the overall effect on the prison community, and accommodations that could be provided at de minimis cost. See id.

from the CRDP bore a rational connection to legitimate penological interests.

III.

For these reasons, we will summarily affirm the District Court's judgment.